IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

    Plaintiff,

v.                                        Civil Action No. 1:14cv1047-AJT-TCB

PRINCE WILLIAM MARINA, INC.,

Serve: Carlton L. Phillips
       12849 Gordon Blvd.
       Woodbridge, VA 22192

PRINCE WILLIAM MARINE SALES, INC.,

Serve: Carlton L. Phillips
       12849 Gordon Blvd.
       Woodbridge, VA 22192

AND

RANDOLPH W. RENCHARD,

Serve: Randolph W. Renchard
       106 Prettyman Dr.
       Rockville, MD 20850

    Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff American Automobile Insurance Company ("American"), by counsel, hereby files this complaint for declaratory judgment against Prince William Marine Sales, Inc. ("PWMS"), Prince William Marina, Inc. ("PWM") (collectively, the "Policyholder Defendants"), and Randolph W. Renchard ("Renchard"), and states as follows:

1

## NATURE OF THE ACTION

1. This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 *et seq.* American seeks a declaration that it is not obligated to defend and/or indemnify the Policyholder Defendants under a contract of insurance issued by American in effect between February 1, 2011 and February 1, 2012, as described more fully herein in connection with claims asserted against them by Renchard in a civil lawsuit pending in the United States District Court for the District of Columbia.

## THE PARTIES

2. American is a corporation organized under the laws of the State of Missouri and maintains its principal place of business in California.

3. PWMS is a corporation organized under the laws of the Commonwealth of Virginia, and maintains its principal place of business in Woodbridge, Virginia.

4. PWM is a corporation organized under the laws of the Commonwealth of Virginia, and maintains its principal place of business in Woodbridge, Virginia.

5. Renchard is an individual and a resident of the State of Maryland.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) in that American and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendants in this case pursuant to Fed. R. Civ. P. (4)(K)(1)(A) and Virginia Code § 8.01-328.1 because each of the Defendants

either resides in the Commonwealth of Virginia or has engaged in business and transactions that are the subject of this dispute in the Commonwealth of Virginia.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) in that the Policy was issued to the Policyholder Defendants in Prince William County, Virginia and a substantial part of the events, acts, or omissions giving rise to this matter occurred in this judicial district.

## THE UNDERLYING ACTION

9. On or about January 6, 2014, Renchard filed the original complaint in the Underlying Action, captioned *Randolph W. Renchard v. Prince William Marine Sales, Inc., Prince William Marina, Inc., and Frank Fiorina*, Civil Action No. 13-0002760 in the Superior Court of the District of Columbia (the "Underlying Action"). The case was subsequently removed to the United States District Court for the District of Columbia and assigned Civil Action No. 1:13-cv-00698. A copy of the original complaint is attached hereto as Exhibit A and is hereby fully incorporated by reference.

10. Subsequently, all defendants in the Underlying Action filed motions to dismiss. Defendant Fiorina's motion to dismiss was granted and he was dismissed from the case. PWMS and PWM's motions to dismiss were granted in part and denied in part. Renchard subsequently filed an amended complaint against PWMS and PWM (the "First Amended Complaint"). A copy of the First Amended Complaint filed in the Underlying Action is attached hereto as Exhibit B and is hereby fully incorporated by reference.

11. In the First Amended Complaint, Renchard asserts various causes of action against the Policyholder Defendants arising from the sale of a yacht by PWMS to Renchard, and the Policyholder Defendants' alleged subsequent wrongful repossession and resale of the yacht.

3

The First Amended Complaint alleges claims for wrongful repossession/conversion, breach of the District of Columbia Consumer Protection Procedures Act, negligence, gross negligence, breach of contract, unjust enrichment, civil conspiracy, and fraud.

12. The First Amended Complaint alleges that Renchard purchased the yacht from PWMS in November 2009. The total purchase price for the yacht was $1,408,609.28. In connection with the purchase, in May 2009, Renchard transferred by wire $516,481.28 from his living trust to PWMS as a cash deposit toward the purchase of the yacht. In addition, Renchard provided a trade-in boat valued at $210,000, bringing the amount owed to $682,128.28. PWMS financed the balance of the purchase price by entering into a Retail Installment Contract and Security Agreement with Renchard for $692,246.00, which was subsequently modified at the request of PWMS (the "Note").

13. The First Amended Complaint alleges that at the time of the purchase, without Renchard's knowledge, PWM retained a set of the keys for accessing both the yacht and Columbia Island Marina in Washington, D.C. ("CIM"), the yacht's home.

14. The First Amended Complaint alleges that, subsequent to Renchard's purchase of the yacht, PWM performed maintenance and repairs to the yacht while it was docked at CIM. PWM subsequently forwarded work orders for payment to Renchard for the maintenance and repairs it performed.

15. The First Amended Complaint alleges that in early 2010, Renchard informed PWM that he could not afford to pay the total amount owed on the work orders forwarded to him by PWM, and that several of the work orders were contested. PWM suggested to Renchard a monthly payment plan for work orders, and Renchard agreed to pay PWM $500.00 per month towards the work orders, which totaled approximately $25,283.71.

16. The First Amended Complaint alleges that in November 2010, PWM informed Renchard that a balance was owed on the trade-in of approximately $26,387.08 and that Renchard needed to pay off that balance.

17. The First Amended Complaint alleges that PWM represented that it would combine the trade-in Balance with the work order balance arrearages so that the combined amount owed would still be payable at the rate of $500.00 per month. Renchard agreed, and PWM paid off the $26,387.08 due on the trade in, bringing the total then owed to PWM, in addition to the Note, to approximately $51,500.00.

18. The First Amended Complaint alleges that in the first half of 2011, Renchard incurred additional fees for purported repairs and maintenance to the yacht totaling $21,039.94. In June 2011, PWM demanded that Renchard pay off the work order balance and trade-in balance in full – approximately $73,847.63 – by July 30, 2011.

19. The First Amended Complaint alleges that in September 2011, after Renchard failed to pay the work order and trade-in balances in full, PWM used the set of keys that it had retained solely to make repairs to the yacht to: (i) enter CIM, (ii) seize Renchard's yacht, and (iii) sail the yacht to PWM's own marina in Woodbridge, Virginia.

20. The First Amended Complaint alleges that PWM seized Renchard's yacht even though Renchard had not missed any payments on the Note to PWMS and had not missed any of the monthly $500 payments.

21. The First Amended Complaint alleges that PWM seized Renchard's yacht even though PWM had failed to comply with any federal or District of Columbia statutes or regulations governing repossession of the yacht or the imposition of a lien on the yacht.

22. The First Amended Complaint alleges that after wrongfully repossessing and unlawfully detaining Renchard's yacht, PWM converted it by, upon information and belief, trading or selling it to a Frank Fiorina. PWM stated to Renchard that he would not receive any compensation from the "trade" of the yacht, and that all of Renchard's equity in the yacht would be lost, because PWM claimed the yacht was "only worth today $700,000-$800,000" and that at the time PWM had "repossessed" the yacht, Renchard "owed [PWM] 825K." PWM later allegedly informed Renchard that for purposes of the transaction with Frank Fiorina, the yacht was valued at $1,280,000.

23. Based on the foregoing facts, Renchard alleged multiple causes of action against the Policyholder Defendants in the First Amended Complaint, including wrongful repossession/conversion (*see* Exhibit B, ¶¶ 82-97); breach of District of Columbia Consumer Protection Procedures Act – D.C. Code § 28-3901, *et seq.* (*see* Exhibit B, ¶¶ 98-114); negligence (*see* Exhibit B, ¶¶ 115-120); gross negligence (*see* Exhibit B, ¶¶ 121-123); breach of contract and breach of implied covenant of good faith and fair dealing (*see* Exhibit B, ¶¶ 124-133); unjust enrichment (*see* Exhibit B, ¶¶ 134-140); civil conspiracy *see* Exhibit B, ¶¶ 141-146); and fraud (*see* Exhibit B, ¶¶ 147-153).

24. American has provided, and at the time of this filing, continues to provide, the Policyholder Defendants with a defense in the Underlying Action pursuant to a full and complete reservation of rights.

## THE POLICY

25. American issued insurance policy no. 8 91 MZG 80929862 to the Policyholder Defendants for the period from of February 1, 2011 to February 1, 2012 (the "Policy"). The Policy contains multiple coverages, but pertinent to the instant action are two coverages – the

Commercial General Liability coverage part ("CGL") and the Marine Operations Legal Liability form contained in the Inland Marine portion of the Policy ("MOLL Endorsement"). A copy of the Policy is attached hereto as Exhibit C and is hereby fully incorporated by reference. The Policy provides, in relevant part, as follows:

> **Commercial General Liability Coverage Form – CG 00 01 12 07**
> **Section I – Coverages**
> **Coverage A Bodily Injury and Property Damage Liability**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.
>
>                           * * *
>
>    b. This insurance applies to **bodily injury** and **property damage** only if:
>       (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;
>
>                           * * *
>
> 2. **Exclusions**
>    This insurance does not apply to:
>    a. Expected or Intended Injury
>
>       **Bodily injury** or **property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.
>
>                           * * *
>
>    j. Damage to Property
>
>       **Property damage** to:
>
>                           * * *

7

 (4) Personal property in the care, custody or control of the insured;

\* \* \*

k. Damage to Your Product

**Property damage** to **your product** arising out of it or any part of it.

\* \* \*

## Section V – Definitions

13. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

17. **Property damage** means:

 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

21. **Your product.**

 a. Means:

  (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (a) You;

   (b) Others trading under your name; or

   (c) A person or organization whose business or assets you have acquired; and

  (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

  (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

\* \* \*

## MultiCover – CG 71 58 12 07

Your Commercial General Liability Coverage Form is revised as follows:

\* \* \*

16. **Expected or Intended Injury – Amendment to Exclusion**

SECTION I. Coverage A Bodily Injury and Property Damage Liability, 2. EXCLUSIONS, a. Expected or Intended Injury, is deleted and replaced by the following:

a. Expected or Intended Injury

**Bodily injury** or **property damage** expected or intended from the standpoint of the insured.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

\* \* \*

## Marine Operations Legal Liability Coverage Form – CM 72 06 03 96

\* \* \*

### Section I – Coverages and Insuring Agreements

A. We will pay those sums you become legally obligated to pay as compensatory damages because of **your** liability for loss of, or damage to personal property of others arising:

1. in your marine operations;

2. out of an **occurrence**;

3. while such property is in your care, custody or control for:

  a. Mooring at slips, spaces or buoys provided by you;

       b.    Storage;

       c.    Alteration, repair or maintenance;

       d.    Fueling and miscellaneous servicing of a transient nature;

       e.    Hauling and launching;

       f.    Examination and testing.

B.    We will not pay for punitive or exemplary damages.

C.    We will have the right and duty to defend any suit against you seeking damages. However, we have no duty to defend any insured against a suit seeking damages to which this Coverage Part does not apply. We may investigate or negotiate and settle any claim or suit as we consider appropriate. Our duty to defend or settle ends when the Limit of Insurance has been exhausted by payment of judgments or settlements.

\* \* \*

**Section II – Exclusions**

This insurance does not apply to any loss, damage or expense, nor cover any liability or expense for loss or damage:

\* \* \*

C.    Caused by or resulting from any fraudulent, dishonest or criminal act or conversion by:

    1.    You, any of your partners, officers, employees;

    2.    Any person in your service; or

    3.    Anyone to whom you entrust the property for any purpose.

This exclusion applies whether or not such act or acts occurred:

    1.    While the person was acting alone or in collusion with others; or

    2.    During the regular hours of employment or service.

This exclusion does not supply to property entrusted to carriers for hire as long as the carrier for hire, or to acts of destruction by your employees. However, theft by employees is not covered.

\* \* \*

F.    Caused by or resulting from any watercraft:

    1.    You own, operate or charter;

    2.    Held for sale by you or under consignment to you for sale;

While the watercraft is afloat.

G.    To property:

    1.    You own;

2. Leased to you;
3. You use in your operations for rental or charter purposes;
4. Held for sale by you or under consignment to you for sale.

\* \* \*

**Section IX – Definitions**

A. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

D. **Occurrence** means
1. An accident that takes place during the policy period; or
2. A continuous or repeated exposure to substantially the same general conditions during the policy period, which you neither expected nor intended to happen. All such exposures occurring at any one premises will be considered one occurrence.

\* \* \*

## COUNT I – DECLARATORY JUDGMENT

26. American incorporates the allegations contained in Paragraph 1-25 as set forth fully herein.

27. Under the CGL portion of the Policy, coverage is only provided for bodily injury or property damage caused by an "occurrence."

28. Under the CGL portion of the policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

29. The First Amended Complaint does not allege any facts or circumstances constituting an "occurrence," as the term is defined in the CGL portion of the Policy, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

30. The CGL portion of the Policy excludes coverage for "bodily injury or property damage expected or intended from the standpoint of the insured" pursuant to Exclusion 2.a (as amended).

31. Any bodily injury and/or property damage alleged in the First Amended Complaint was expected or intended from the standpoint of the Policyholder Defendants, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

32. The CGL Portion of the Policy excludes coverage for property damage to personal property in the care, custody or control of the Policyholder Defendants, pursuant to Exclusion 2.j.(4).

33. As alleged in the First Amended Complaint, the subject yacht was in the care, custody and/or control of the Policyholder Defendants at all relevant times, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

34. The CGL portion of the Policy excludes coverage for property damage to the insured's "product" arising out of it or any part of it, pursuant to Exclusion 2.k.

35. The subject yacht is the "product" of the Policyholder Defendants, as the term is defined under the CGL portion of the Policy, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

36. The MOLL Endorsement only applies to those sums an insured becomes legally obligated to pay as compensatory damages because of its liability for loss of, or damage to personal property of others while such property is in its care, custody or control for: Mooring at

slips, spaces or buoys provided by you; storage; alteration, repair or maintenance; fueling and miscellaneous servicing of a transient nature; hauling and launching; or examination and testing.

37. The First Amended Complaint does not seek compensatory damages because of the Policyholder Defendants' liability for loss or damage to the subject yacht while it was in the Policyholder Defendants' care, custody, or control for: Mooring at slips, spaces or buoys provided by you; storage; alteration, repair or maintenance; fueling and miscellaneous servicing of a transient nature; hauling and launching; or examination and testing. Accordingly, the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

38. Under the MOLL Endorsement, coverage is only provided for damages because of the insured's liability for loss of, or damage to personal property of others arising out of an "occurrence."

39. Under the MOLL Endorsement, an "occurrence" is defined as "an accident that takes place during the policy period; or continuous or repeated exposure to substantially the same general conditions during the policy period, which you neither expected nor intended to happen."

40. The First Amended Complaint does not allege any facts or circumstances constituting an "occurrence," as the term is defined in the MOLL Endorsement, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

41. The MOLL Endorsement excludes coverage for any loss, damage or expense caused by or resulting from any fraudulent, dishonest or criminal act or conversion by the insured, its partners, officer, employees, any person in its service, or anyone to whom it entrusts the property for any purpose, pursuant to Exclusion C.

42. The facts and circumstances alleged in the First Amended Complaint state that Renchard's damages resulted from fraudulent, dishonest or criminal acts, and/or conversion by the Policyholder Defendants, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

43. The MOLL Endorsement excludes coverage for any loss, damage or expense caused by or resulting from any watercraft the insured owns, operates, charters, or holds for sale or under consignment for sale, pursuant to Exclusion F.

44. The facts and circumstances alleged in the First Amended Complaint state that Renchard's damages resulted from the yacht, which was owned, operated, chartered, and/or held for sale or under consignment for sale, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

45. The MOLL Endorsement excludes coverage for any loss, damage or expense to property the insured owns; is leased to the insured; the insured uses in its operations for rental or charter purposes; and/or the insured held for sale or under consignment for sale, pursuant to Exclusion G.

46. The facts and circumstances alleged in the First Amended Complaint state that the Policyholder Defendants caused property damage to property the Policyholder Defendants own; is leased to the Policyholder Defendants; Policyholder Defendants use in their operations for rental or charter purposes; and/or the Policyholder Defendants held for sale or under consignment for sale, such that the Policy does not provide coverage to the Policyholder Defendants in connection with the Underlying Action.

47. An actual controversy exists between the parties which would be resolved by this Court's declarations of the rights of the parties.

48. American is entitled to a declaration that it owes no past or present duty to defend or indemnify the Policyholder Defendants under the Policy for the claims and allegations asserted against the Policyholder Defendants in the Underlying Action.

WHEREFORE, Plaintiff American Automobile Insurance Company respectfully prays for the following relief:

a. That this Court declare that American Automobile Insurance Company owes no duty to defend the Policyholder Defendants in the Underlying Action.

b. That this Court declare that American Automobile Insurance Company owes no duty to indemnify the Policyholder Defendants in connection with the Underlying Action.

c. That this Court grant such other relief as may be warranted, just, necessary and proper under the circumstances.

AMERICAN AUTOMOBILE
INSURANCE COMPANY

By Counsel

_____
Thomas S. Garrett
VSB No. 73790
Robert F. Friedman
VSB No.: 82118
Attorneys for American Automobile Insurance Company
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
tgarrett@hccw.com
rfriedman@hccw.com